**Marion Casey COLLINS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 16, 1956.

A. E. Cornett, Hyden, Pleaz W. Mobley, Manchester, for appellant.

Jo. M. Ferguson, Atty. Gen., Robert F. Matthews, Jr., Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Marion Casey Collins, was ·convicted of the murder of Elmer Marcum. His punishment was fixed at life imprisonment.

The killing occurred on Elk Creek in Clay County on August 17, 1955, about four o'clock in the afternoon. Both parties had known each other the greater part of their lives and before this day there had been no trouble between them. It is impossible to gain from this record even a hint of what was the direct cause of the tragedy. The appellant testified that not long before, Elmer Marcum had driven by the house of A. T. Collins, where appellant was seated with others on the porch, and had shaken his fist and directed swear words toward them. From the testimony of one witness offered by the defense, we gain the impression that the decedent was disturbed because appellant purportedly had struck Lloyd Marcum earlier in the day, but, regardless of the motive, the crime occurred with terrible suddenness.

The principal witnesses for the commonwealth were Reuben Marcum (brother-in-law of appellant), Cloe Ledford and Retha Marcum, who were gathered under the shade of a tree in the front yard of Reuben Marcum's premises about 75 yards on the opposite side of the highway from the spot where the killing occurred. They testified that appellant Collins walked into the yard and complained of an injury to his leg. After he remained there a few minutes he left and started down the road. About this time the witnesses noticed that Elmer Marcum had stopped his truck about 75 yards down the road. When appellant saw that Marcum had stopped his truck, he drew his pistol, held it in his right hand with the muzzle down and walked toward Marcum. It was related that before appellant reached him, Marcum asked, "How are you Casey?" and Casey walked up and began shooting. He shot Marcum three or four times and when Marcum had fallen, he emptied his gun into the body. The witnesses did not see any weapon in Marcum's possession and did not hear anything other than that which is above related.

This is appellant's version: "As I got down to the little road that go across to

my house Elmer Marcum pulled in. I had turned over the bank maybe three or four steps. He called me to come back. I didn't think there was anything wrong. I went back and I said, he had the door open when I got back. I said, 'What do you want, Elmer?' He said, 'I want to see if you will give me the same thing you give Lloyd Marcum, you crippled son-of-bitch.' He come at me with a knife. I held my hand up and done like that, (ind. throwing up his hand) he come at me again. I had my pistol on my hip and I started shooting."

There was some evidence introduced to the effect that appellant's finger had been cut, but no knife or other weapons were found. In order to explain why Elmer Marcum had stopped at the point where he was killed, which was not far from appellant's home, the commonwealth introduced several witnesses who testified that the gas tank of Marcum's truck was empty.

On this appeal, it is urged that the judgment should be reversed because (1) the circumstances of the killing do not show that it was done with malice aforethought and the jury could not, therefore, convict for murder, and (2) the commonwealth did not sustain the burden of proving beyond a reasonable doubt that the appellant was guilty of murder.

█ We think the first argument overlooks the fact that it is well within the jury's province to decide from the testimony whether malice aforethought existed.

In Rose v. Commonwealth, 286 Ky. 53, 149 S.W.2d 772, 774, it was said:

"The defendant argues that as the Commonwealth produced no evidence of ill will against deceased by defendant prior to the shooting, therefore no murder instruction should have been given and the court should have instructed only on voluntary manslaughter. In criminal law, the term 'malice aforethought' means a predetermination to commit an act without legal excuse and it is immaterial at what time before the commission of the act such a determination was formed. Therefore, malice may be inferred from the circumstances attending the act and it is for the jury to determine whether or not the act was done with malice aforethought. Harrison v. Com., 279 Ky. 510, 131 S.W.2d 454, and authorities therein cited."

In arguing the second ground urged for reversal appellant acknowledges that questions of fact and the weight and credibility to be accorded the testimony of witnesses are peculiarly within the province of the jury, but insists that under § 238 of the Criminal Code, if a jury has a reasonable doubt of the proof of defendant's guilt, he should be acquitted. It was suggested that the conviction was predicated upon the testimony of Reuben Marcum and Retha Marcum alone and, in order to convict, it was necessary for the jury to disregard the testimony of appellant and his witnesses.

█ Section 238 of the Criminal Code pertains to the type of instruction which must be given to the jury in criminal cases. In the case at bar, the instructions fulfilled the provisions of that section. The specific instruction reads:

"If, upon the whole case, you have a reasonable doubt of the defendant having been proved guilty you ought to find him not guilty; or if you find him guilty, but on all the evidence have a reasonable doubt as to whether he has been proved guilty of wilful murder or voluntary manslaughter, you will find him guilty of the lower offense, voluntary manslaughter."

█ In any event, the reasonable doubt a jury is permitted to entertain must be as to the guilt of the accused on the whole of the evidence and not as to any particular fact in the case. Weaver v. People, 132 Ill. 536, 24 N.E. 571. It does

not mean a fanciful doubt or a whimsical or capricious doubt. United States v. Foster, D.C.N.Y., 9 F.R.D. 367. It has sometimes been defined as a doubt that would cause one to hesitate to act in any of the important affairs of one's own life. Commonwealth v. Kluska, 333 Pa. 65, 3 A.2d 398. A reasonable doubt is not raised merely because evidence is conflicting.

In this case we feel convinced that any impartial jury, after considering all the evidence, would have an abiding faith, to a moral certainty, in defendant's guilt because the evidence indicates beyond doubt that appellant was guilty of murder.

Judgment affirmed.