# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2128

_____

Chae Kon Chong,                              *
                                             *
            Appellant,                       *
                                             *   Appeal from the United States
      v.                                     *   District Court for the Western
                                             *   District of Missouri.
Roscoe Parker; Rick A. Parker;               *
Wood and Huston Bank,                        *
                                             *
            Appellees.                       *

_____

Submitted: January 16, 2004

Filed: March 9, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
      Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Chae Kon Chong appeals two rulings entered against him in his action against Rick Parker (Rick), Roscoe Parker (Mr. Parker), and Wood and Huston Bank. The district court granted summary judgment to the bank and, in the trial involving the Parkers, refused to submit punitive damages to the jury. We affirm the summary judgment and reverse and remand with respect to the matter of punitive damages.

## I.

This case arises out of the sale of a car by Mr. Parker for his son, Rick, to Mr. Chong for the use of his daughter, Sunhee. The sale was conducted at the bank, which was Mr. Parker's place of employment. At the time of the sale, Mr. Chong did not speak or understand English, and his daughter discussed the car's history and negotiated the terms of the sale with Mr. Parker. Rick had previously informed Mr. Parker that the vehicle had been declared salvage following an accident involving the car's original owner, but Mr. Parker misrepresented to Sunhee (and thus to Mr. Chong) that the car had not been in any accidents. When the car began malfunctioning, Sunhee learned from a mechanic that the car had been rebuilt. Through the internet, she found out that the car's history included a salvage title.

Mr. Chong sued the Parkers and the bank for common-law fraud and violations of the Federal Odometer Act, *see* 49 U.S.C. §§ 32701-32711, and Missouri's Merchandising Practices Act (MMPA), *see* Mo. Rev. Stat. §§ 407.010-407.307. The district court granted the bank summary judgment on the claims against it. A jury found for the Parkers on the Federal Odometer Act claim but could not reach a verdict on the common-law fraud or MMPA claims. A second trial was conducted on the MMPA claim against the Parkers; the jury found for Mr. Chong and awarded him $2000 in actual damages. The trial court refused to submit punitive damages to the jury.

## II.

Mr. Chong alleged in his complaint that the bank participated in Mr. Parker's fraudulent misrepresentations about the car. The car was parked in the bank's parking lot with a "For Sale" sign on it when Mr. Chong first saw it and inquired about taking a test drive. While Sunhee was aware that Mr. Parker (and not the bank) was selling the car, Mr. Chong believed that the bank owned it. Mr. Parker negotiated the terms of sale with Sunhee, and Mr. Chong signed the documents pertaining to the purchase

of the car at the bank. Mr. Parker also secured a car loan for Mr. Chong from the bank to pay for the car.

While all these activities took place at the bank, there is no evidence that the bank participated in the fraud. Mr. Chong's daughter and translator, Sunhee, knew that the bank was not selling the car. Mr. Parker specifically told Sunhee that he was selling the car for his son, but Sunhee did not believe that this information was important enough to pass on to her father before he bought the car. Sunhee was aware that Mr. Parker was speaking for himself and not for his employer, which had no relationship with the car.

Mr. Chong argues that even though his mistake about the car seller's identity was the result of his daughter's failure to inform him and not due to any misrepresentation by Mr. Parker or the bank, the bank still benefitted from Mr. Parker's fraud through the interest payments on the loan and thus participated in the fraud. The loan documents, however, were filled out after the sale was complete. The loan was an entirely separate transaction from the sale of the car, and there was no misrepresentation within the loan documents. If anything, the bank was injured by the use of the car as collateral because the car's selling price (and thus the loan amount) was too high due to Mr. Parker's misrepresentation. Mr. Parker's fraud had the potential to injure the bank as well as Mr. Chong.

Mr. Chong maintains that "a party not actually making the fraudulent representation is liable if he accepted the benefits of the transaction and had either actual or constructive knowledge at the time of the fraud, or at the time he accepted the benefits, that fraud had been committed." *Fallert Tool & Eng'g Co. v. McClain*, 579 S.W.2d 751, 756 (Mo. Ct. App. 1979). But there is no evidence here that the bank had actual knowledge of Mr. Parker's misrepresentation, nor could the fraud be imputed to the bank under Missouri agency law. " 'While a corporation ordinarily is bound by the knowledge of its agents ..., the agent's knowledge of his own

-3-

unauthorized act, not brought home to the authorized corporate board, officer or agent, cannot be imputed to the corporation.' " *Motor Transp. Springfield v. Orval Davis Tire Co.*, 585 S.W.2d 195, 202 (Mo. Ct. App. 1979) (quoting *Trice v. Lancaster*, 270 S.W.2d 519, 524 (Mo. Ct. App. 1954). The bank did not authorize Mr. Parker to defraud Mr. Chong or even to sell his son's car at the bank during business hours. Mr. Parker acted only on his own behalf, outside the scope of his employment, and extended no benefits of his fraud to the bank. The district court therefore did not err in granting the bank summary judgment.

III.

Mr. Chong also appeals the trial court's refusal to submit the issue of punitive damages to the jury. Under the MMPA, "[t]he court may, in its discretion, award punitive damages" against defendants who employ fraudulent selling practices. Mo. Rev. Stat. § 407.025.1. Our case law is clear that this language does not allow a judge (as opposed to a jury) in a jury trial in federal court to fix the amount of punitive damages awards, as the Parkers mistakenly argue. *See Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 571 (8th Cir. 1998).

To determine whether the trial court erred by refusing to submit punitive damages to the jury, we must apply Missouri law. Only outrageous conduct stemming from an "evil motive or reckless indifference" can give rise to an award of punitive damages. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. 1989). "In reviewing the submissibility of the issue of punitive damages, we review the evidence in the light most favorable to submissibility." *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 364 (Mo. Ct. App. 1993).

In *Carpenter*, the trial court had refused to submit punitive damages to the jury because it believed that the plaintiff had failed to present substantial evidence that the defendant's conduct was outrageous. *Id.* The defendant had made repairs to a car before the plaintiff-buyers took possession of it but did not inform the buyers. *Id.* at

353, 364. The appeals court reversed the trial court's refusal to submit the issue of punitive damages, saying "that the jury could reasonably infer that [the defendant's] actions were taken with reckless indifference to the rights of the [plaintiffs] or were evil, motivated solely by [the defendant's] desire to make a sale regardless of the repairs [that the defendant] had undertaken but had not disclosed." *Id.* at 364.

Mr. Chong's case is like *Carpenter* because, in both cases, the seller made intentional misrepresentations in order to induce the buyer to pay a higher price than he would have if he had known the truth. We believe, in fact, that Mr. Chong's case is on all fours with *Carpenter* in every relevant particular. Mr. Parker lied about the car's title and history to Sunhee and Mr. Chong to get a better price for the car. Since Sunhee had asked Mr. Parker twice about whether the car had a salvage title or had been involved in any accidents, it should have been apparent to him that the car's accident history was important to Sunhee and her father. Mr. Parker misled Sunhee and Mr. Chong to induce them to buy a car that they would otherwise not have bought.

The Parkers argue that a punitive damages instruction would have been inappropriate in the present case because, unlike the sellers in *Carpenter*, the Parkers were unaware that the car that they were selling was in need of repair. In *Moore v. Courtesy Chevrolet, Inc.*, 854 S.W.2d 13, 13-14 (Mo. Ct. App. 1993), however, the Missouri Court of Appeals reversed a trial court's refusal to submit punitive damages to the jury where the plaintiffs were misled about who had driven a car previously, even though "[t]he car never gave plaintiffs any trouble, and they ... never claimed it was not a good car." The defendant did not need to disregard the plaintiffs' safety in order to justify a punitive damages instruction. The court found that "the jury could have believed that defendant intentionally misrepresented the history of the automobile; that the misrepresentation was a material misrepresentation; that the defendant made the misrepresentation with the purpose of inducing the unsuspecting plaintiffs to buy the automobile and pay an excessive price." *Id.* at 14.

-5-

We believe that Mr. Chong has as strong an argument as the plaintiffs in *Moore* had for submitting punitive damages to the jury because Sunhee asked about the car's history at least twice and the question of whether a car is rebuilt relates directly to whether it is safe and to its price. From the evidence presented at trial, "[t]he jury could have inferred defendant[s'] evil motive or reckless indifference to the rights of [Mr. Chong], and on that basis could have considered defendant[s'] conduct outrageous." *Id.* (internal quotations omitted).

Lastly, the trial judge believed that "it [was] significant ... that neither Mr. Roscoe Parker nor Mr. Rick Parker [was] generally in the business of buying and selling cars, more specifically buying and selling salvage cars or rebuilt cars." The MMPA, however, applies to anyone selling merchandise in Missouri; the statute does not differentiate between merchants and non-merchants. While Mr. Parker's status as a private seller suggests that a punitive damages award might not create the same kind of deterrence as would a punitive damages award against a car dealership, the purpose of the MMPA is to protect consumers from all fraudulent sellers, be they merchants or not. Given Missouri case law, it is for the jury, not the court, to determine whether punishing the Parkers with a punitive damages award is appropriate where Mr. Parker was not a professional seller but disregarded Mr. Chong's rights and interests.

On remand, the district court should try the matter of punitive damages and submit it to the jury. Viewing the evidence in the light most favorable to submissibility, a reasonable jury could conclude "that the defendants' conduct was egregious and that it demonstrated a clear and disturbing disregard for [Mr. Chong's] safety and … economic interests." *See Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1027 (8th Cir. 2000), *cert. denied*, 531 U.S. 825 (2000).

## IV.

For the reasons stated, we affirm the district court's grant of summary judgment in favor of the bank but reverse and remand with respect to its failure to submit the matter of punitive damages to the jury.

_____